**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

ANTHONY D. AMAKER,

                              Plaintiff,

                 v.                                              No. 03-CV-1003
                                                                    (NAM/DRH)
GLENN S. GOORD, Commissioner of N.Y.S.
D.O.C.S.; LUCIEN J. LECLAIRE, Deputy
Commissioner; R. GIRDICH, Superintendent;
GEORGE DUNCAN, Superintendent; M.D.
LESTER WRIGHT; G. KEINERT, Deputy
Superintendent; J. MARTIN; N. BEZIO;
SPINNER, Corrections Officer; B. LADUKE,
Corrections Officer; W. TROMBLY; P. DABIEW,
Corrections Officer; C.O. McCASLAND;
CHAMPAGNE, Corrections Officer; T. NEPHEW,
Corrections Officer; SGT. KOUROFSKY; D.
BARNEY, Corrections Officer; D. RONDEAU,
Corrections Officer; JOHN DONELLI, Deputy
Superintendent; M. JONES, Corrections Officer;
A. HULSE, Corrections Officer; A. BIRO,
Corrections Officer; J. FLAHARTY, Corrections
Officer; R. EURICH; CAPT. LUCAS; E. ARTUZ;
NURSE LOPEZ; S. KINNEY; L. MYERS; J.
CLEGG; D. WOLFE; E. DELGADO; D.
BOTSFORD; J. KELLEY; P. GUZMAN; D.
LACLAIRE, Deputy Superintendent; NURSE
MILLER; G. WATERFONT; D. BUFFERMAN; S.
BERNARDI, Deputy Commissioner; and
NURSE ADMIN. TOUSIGNANT,

                              Defendants.
_____

**APPEARANCES:**                              **OF COUNSEL:**

ANTHONY D. AMAKER
89-T-2815
Wende Correctional Facility
Post Office Box 1187
Alden, New York 14004

HON. ANDREW M. CUOMO                    RISA L. VIGLUCCI, ESQ.
Attorney General for the               Assistant Attorney General
   State of New York
Attorney for Defendants
The Capitol
Albany, New York 12224-0341

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

Plaintiff pro se Anthony D. Amaker ("Amaker"), an inmate in the custody of the New York State Department of Correctional Services ("DOCS"), brings this action pursuant to 42 U.S.C. § 1983 alleging that defendants, forty-one DOCS employees, violated his constitutional rights under the Fourth, Eighth, and Fourteenth Amendments.  Compl. (Docket No. 1).  Presently pending are defendants' motion and Amaker's cross-motion for summary judgment pursuant to Fed. R. Civ. P. 56.  Docket Nos. 152, 157.  For the following reasons, it is recommended that (1) defendants' motion be granted in part and denied in part, and (2) Amaker's cross-motion be denied.


### I. Background

The allegedly unconstitutional events of which Amaker complains occurred during his incarcerations at Upstate Correctional Facility ("Upstate"), Downstate Correctional Facility ("Downstate"), and Great Meadow Correctional Facility ("Great Meadow").  Compl..

---

[1]This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

**A. Upstate**

On September 7, 2001, Amaker refused to provide DOCS with a DNA sample "and was charged with disciplinary violations and received a Tier II hearing[2] on September 13, 2001. Amaker was found guilty and received thirty days keeplock[3]. . . ."  Selsky Decl. (Docket No. 152, attachment 6, ¶ 4).  On or about October 10, 2001, Amaker was again instructed to provide a DNA sample, which he again refused.  Id. at ¶ 5.  Amaker again received disciplinary charges and a Tier III hearing was held where he was found guilty, and sentenced to six months in the special housing unit ("SHU").[4]  Id.  Towards the end of the six month period, Amaker was ordered a third time to provide a DNA sample, which he refused.  Id. at ¶ 6.  Amaker was found guilty and received another six months in SHU.  Id. Because DNA sampling was mandatory for certain felonies, DOCS procedure provided that "if inmates refuse to provide a sample, the sample will be forcibly taken."  N.Y. Exec. Law § 995-c (3) (McKinney Supp. 2006); Selsky Decl. at ¶ 7; Docket No. 157, attachment 4 at 27.

On September 4, 2002, Amaker was scheduled to be transported to Downstate to have his DNA sample taken but refused to leave his cell and was issued an inmate misbehavior

---

[2]DOCS regulations provide for three tiers of disciplinary hearings depending on the seriousness of the misconduct charged.  A Tier III hearing, or superintendent's hearing, is required whenever disciplinary penalties exceeding thirty days may be imposed.  N.Y. Comp. Codes R. & Regs. tit. 7, §§ 253.7(iii), 270.3(a) (2007).

[3]"Keeplock is a form of disciplinary confinement segregating an inmate from other inmates and depriving him of participation in normal prison activities."  Green v. Bauvi, 46 F.3d 189, 192 (2d Cir. 1995); N.Y. Comp. Codes R. & Regs. tit. 7, § 301.6 (2007).

[4]SHUs exist in all maximum and certain medium security facilities.  The units "consist of single-occupancy cells grouped so as to provide separation from the general population . . . ."  N.Y. Comp. Codes R. & Regs. tit. 7, § 300.2(b) (2007).  Inmates are confined in a SHU as discipline, pending resolution of misconduct charges, for administrative or security reasons, or in other circumstances as required.  Id. at pt. 301.

report.  Selsky Decl. at ¶ 7; Docket No. 157, attachment 4 at 10.  A disciplinary hearing was

held on September 13, 2002.  Amaker was not in attendance but was found guilty and

sentenced to six months in SHU.  Docket No. 157, attachment 5 at 13.  Amaker appealed

administratively and a rehearing was ordered.  Id.; Docket No. 152, attachment 9 at 1-3, 11-

13.  At the rehearing on October 31, 2002, Amaker was ejected by the hearing officer for

his "uncooperative" behavior, was found guilty, and received three months in SHU.  Selsky

Decl. at ¶ 12; Docket No. 152, attachment 7 at 4.  Amaker again administratively appealed

the hearing and on December 6, 2002, it was again reversed on the ground that Amaker

was improperly precluded from attending the hearing and his records of the disciplinary

proceedings were expunged.  Docket No. 152, attachment 7 at 1.  Amaker was returned to

the general population at Great Meadow on February 10, 2003.  Compl. at ¶ 207.

On September 5, 2002, Amaker was again ordered to leave his cell for the trip to

Downstate.  Selsky Decl. at ¶ 8.  Amaker refused and was issued another misbehavior

report.  Docket No. 152, attachment 8 at 6; Docket No. 157, attachment 4 at 11.  After

Amaker repeatedly refused orders from Officer LaDuke, Sgt. Kourofsky, Lt. Martin, and

Captain Bezio, all defendants herein, to exit his cell; Deputy Superintendent Keinert

authorized Officers Trombley, Nephew, Champagne, Spinner, McCasland, Barney, and

Rondeau, also defendants herein, to use chemical agents and force, if necessary, to extract

Amaker.  Docket No. 152, attachment 8 at 12, 15-20; Docket No. 152, attachment 14 at 24-

30.  Officer Trombley applied bursts of chemical agents, Officers Nephew and Trombley

used a ram to clear Amaker's cell hatch, Officer McCasland operated a video camera,

Amaker was removed from his cell, and Officers Barney and Rondeau escorted Amaker to

decontamination and to the van to Downstate without any further resistance by Amaker.  Id.

Amaker alleges that he was hit with the ram and was found to have "a cut on his right fifth digit of his hand, to which a dry sterile dressing was applied . . . [and] an abrasion to his right rib cage on the posterior side."  Smith Decl. (Docket No. 152, attachment 5) at ¶ 12[5]; see also Docket No. 157, attachment 3 at ¶¶ 12, 15; Docket No. 152, attachment 14, 40-41.

Amaker was seen during sick call on September 6, 2002 for complaints of pain in his ribs and hand.  Smith Decl. at ¶ 13; Docket No. 152, attachment 8 at 13-14; Docket No. 152, attachment 14 at 14.  Amaker's wound was redressed and Physician's Assistant Tichnor ordered X-rays of Amaker's ribs.  Smith Decl. at ¶ 13); Docket No. 152, attachment 8 at 13-14, Docket No. 152, attachment 14 at 14.  The X-rays were completed on September 11, 2002 and were negative.  Smith Decl. at ¶ 13; Docket No. 152, attachment 8 at 13-14; Docket No. 152, attachment 14 at 14.  Despite the X-ray results, Amaker filed an inmate grievance claiming that he was still in pain, his ribs were broken, and the medical staff was neglecting him.  Docket No. 152, attachment 15 at 1.  The grievance was subsequently denied. as was Amaker's appeal.  Id.

Amaker also complains about inappropriate eye care, alleging that his treatment and appointments were delayed and that no solution was available for his presently prescribed contact lenses.  Compl. at ¶ 24.  He lodged an inmate grievance concerning his contact solution.  Docket No. 157, attachment 3 at 29.  Amaker claimed that he was not receiving

---

[5]Amaker claims that Nancy Smith does not have the requisite personal knowledge to submit a declaration.  In order for a declaration to be based on personal knowledge it must not be "general or conclusory" and must be "based on [more than] mere suspicion, rumor, hearsay, or secondhand information."  Jackson v. Ricks, No. 02-CV-00773 (GLS/GHL), 2006 WL 2023570 at *9 (N.D.N.Y. July 18, 2006).  Smith, as nurse administrator, bases her assertions on business records which are admissible as a hearsay exception under, for example,  Fed. R. Evid. 803(6).  Smith's declaration is, therefore, properly submitted and considered.

solution and it was damaging his lenses and vision.  Id.  The grievance was denied, stating that Nurse Guzman, a defendant herein, had seen Amaker but that Amaker remained noncompliant with the prison's policies concerning dispensing the solution.  Id.  Amaker's appeal was denied.  Id.  Additionally, Amaker claims that Upstate Nurses Miller and Bufferman, defendants herein, tampered with Amaker's pain medication by diluting it, causing Amaker severe abdominal pain.  Compl. at ¶ 22.  Defendants state that the orders to dilute came from defendant Miller and that none of Amaker's complaints of abdominal pain were documented.  Moreover, Amaker claims he was denied medical treatment because he did not receive knee braces while incarcerated at Upstate.  Compl. at ¶ 23.

### B. Downstate

On September 5, 2002, Amaker was transported[6] to Downstate to have the DNA sample taken.  Docket No. 157, attachment 4 at 12; Docket No. 152, attachment 12 at 1.  Officer Artuz, a defendant herein, with the support of S. Kinney, ordered Amaker to submit to the DNA withdrawal, but Amaker refused.  Docket No. 152, attachment 12 at 1, 5-6.  An inmate misbehavior report was issued.  Id. at 1; Docket No. 157, attachment 4 at 12.  However, the inmate misbehavior report did not result in a disciplinary hearing because the submission packet was late and contained incomplete information.  Docket No. 152, attachment 14 at 32.

After being issued an inmate misbehavior report, Amaker was turned over to the DNA

---

[6]Amaker claims that defendants Botsford, Clegg, Wolfe, and Delgado "use[d] their position[s] to fraudulently make the outside hospital trip . . . for the assault."  Compl. at ¶ 29.

extraction team.  Id. at 1; Docket No. 157, attachment 4 at 12.  The extraction team was composed of Officers Eurich, Biro, Flaherty, Thompson, Hulse, and Jones, defendants herein.  Docket No. 152, attachment 12 at 6.  When the team arrived to take the finger stick DNA sample, Amaker allegedly closed his fists necessitating Biro, Flaherty, Hulse, and Jones to perform body holds[7] in order to open the fist and retrieve the blood sample and finger prints.  Id. at 7-8.  Amaker alleges the team assaulted him during this process, using unnecessary force.  Compl. at ¶13.  Officer Wieringa operated the video camera while Nurse Lopez took the finger stick sample.  Docket No. 152, attachment 12 at 5.  Nurse Myers conducted a physical exam after the extraction and found that there were no additional injuries attributed to the DNA extraction except the two that occurred earlier that day at Upstate.  Id.

### C. Great Meadow

Amaker alleges that Great Meadow continued his medical maltreatment by denying him his pain medication.  Compl. at ¶ 22.  Specifically, he claims that he received no pain medication from February 3 to June 2003.  Id.  Defendants claim that on January 21, 2002, Amaker refused his pain medication and subsequently ceased receiving it.  Smith Decl. at ¶ 13.

This action followed.

---

[7]The record is inconsistent as to which officers performed arm holds and which performed finger holds.  However, it appears uncontradicted at least that Amaker's left and right arms were pinned down and his fingers were pried apart to release his fist.  Docket No. 152, attachment 14 at 34-37; Id., attachment 12 at 6-8, 10-13.

## II.  Discussion

In his complaint, Amaker alleges three claims.  The first is liberally construed as a Fourth Amendment claim alleging that Executive Law § 995 is unconstitutional.  Amaker also alleges Eighth Amendment claims for being subjected to unnecessary force during the DNA extraction and medical indifference from DOCS staff.  Lastly, Amaker claims that he has been deprived of his Fourteenth Amendment right to Due Process when he was unjustly confined in SHU.  Defendants move for summary judgment as to all claims and defendants contending that (1) the Fourth Amendment claim is improper as the statute is constitutional and there was no excessive force applied during the extraction, (2) there was no medical indifference, (3) Amaker suffered no due process violations because the records of his disciplinary hearings were expunged after reversal, (4) there is no supervisory liability, and (5) defendants are entitled to qualified immunity.  Amaker cross-moves for summary judgment claiming (1) DOCS did not have rule making authority to promulgate rules pertaining to, or withdraw samples for, DNA extraction, (2) supervisory liability exists, and (3) a due process violation occurred due to his prolonged stay in SHU despite the subsequent administrative remedies of expungement.  For the following reasons, defendants' motion should be granted in part and denied in part, and Amaker's cross-motion should be denied.

## A. Legal Standard

A motion for summary judgment may be granted if there is no genuine issue as to any

material fact if supported by affidavits or other suitable evidence and the moving party is entitled to judgment as a matter of law. The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Facts are material if they may affect the outcome of the case as determined by substantive law.  Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).  All ambiguities are resolved and all reasonable inferences are drawn in favor of the non-moving party. Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

The party opposing the motion must set forth facts showing that there is a genuine issue for trial. The non-moving party must do more than merely show that there is some doubt or speculation as to the true nature of the facts.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. Gallo v. Prudential Residential Servs. 22 F.3d 1219, 1223-24 (2d Cir. 1994); Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988).

When, as here, a party seeks summary judgment against a pro se litigant, a court must afford the non-movant special solicitude.  Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006).  However, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.  Anderson, 477 U.S. at 247-48.

**B. Fourth Amendment**

**1. Failure to State a Claim**

An action commenced pursuant to 42 U.S.C. § 1983 requires the "deprivation of any right[], privilege[], or immunit[y] secured by the Constitution" or laws of the federal government.  42 U.S.C. § 1983.  Thus, no action lies under § 1983 unless a plaintiff has asserted the violation of a federal right.  See Middlesex County Sewerage Auth. v. Nat'l Sea Clammers Ass'n, 453 U.S. 1, 19 (1981).  Prisoner DNA extraction is analyzed pursuant to the Fourth Amendment.  Nicholas v. Goord, 430 F.3d 652, 667 (2d Cir. 2005).  The Second Circuit "recognized that the [New York] statute was 'not motivated by concerns for inmate safety and health, institutional order, or discipline' . . . ; [n]evertheless. . .the statute did serve [a] special need[]. . . ."  Id.  Thus, "[t]he Second Circuit has considered and upheld statutes requiring certain convicts to submit blood samples for analysis and inclusion in a DNA database . . .   uph[olding] New York's DNA index statute over almost every conceivable constitutional challenge."  Jackson v. Ricks, No. 02-CV-00773 (GLS/GHL), 2006 WL 2023570 at *23 (N.D.N.Y. July 18, 2006)(citations omitted).

In this case, construing Amaker's claims liberally, he contends that his right to refuse DNA extraction was violated by the demands of unconstitutional legislation.[8]  In light off the

---

[8]Amaker also makes multiple claims that DOCS lacked the authority to promulgate or enforce the DNA extraction policy because that authority lies solely with the Division of Criminal Justice Services ("DCJS").  DCJS has sole authority to establish notification procedures for the DNA index.  N.Y. COMP. CODES R. & REGS. tit. 9, § 6191.2.  However, DOCS has been delegated the authority to notify offenders of their "obligation to provide a DNA sample. . . ."  Id. § 6191.3(a).  Furthermore, pursuant to the authority granted to the Commissioner of DOCS in Executive Law §112, the promulgation of Title 7 is constitutional because it "does not conflict with the statutes of this state. . . ."  N.Y. Exec.

aforementioned case law, this contention is clearly invalid.  Thus, defendants' motion for summary judgment should be granted based upon Amaker's failure to state a claim concerning a Fourth Amendment violation.

## 2. Qualified Immunity[9]

___Defendants also contend that they are entitled to qualified immunity.  Qualified immunity generally protects governmental officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Aiken v. Nixon, 236 F. Supp. 2d 211, 229-30 (N.D.N.Y. 2002) (McAvoy, J.), aff'd, 80 Fed.Appx. 146 (2d Cir. Nov. 10, 2003).  However, even if the constitutional privileges "are clearly established, a government actor may still be shielded by qualified immunity if it was objectively reasonable for the . . . official to believe that his [or her] acts did not violate those rights." Smith v. City of Albany, No. 03-CV-1157, 2006 WL 839525 *16 (N.D.N.Y. Mar. 27, 2006) (quoting Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991); Magnotti v. Kuntz, 918 F.2d 364, 367 (2d Cir. 1990) (internal citations omitted)).

─────────────────

Law §112(1); N.Y. COMP. CODES R. & REGS. tit. 7, § 270.2 B(7)(ii).   Amaker also appears to allege that the amended statute did not apply to him as he was convicted prior to the statute's initial promulgation.  However, the 1999 amended version of Executive Law § 995 was made retroactively applicable to certain felonies (e.g., assault, homicide, rape, incest, escape, attempted murder, kidnaping, arson, burglary), of which Amaker was convicted.  Nicholas, 430 F.3d at 656, nn. 1 & 2.  These contentions by Amaker should, therefore, be rejected.

[9]Qualified immunity is sought on this claim for defendants Goord, LeClaire, Girdich, Wright, Keinert, Martin, Bezio, Spinner, LaDuke, Trombly, McCasland, Champagne, Nephew, Kourofsky, Barney, Rondeay, Donelli, Jones, Hulse, Biro, Flaharty, Eurich, Lucas, Artuz, Kinney, Lopez, Myers, Clegg, Wolfe, Delgado, Botsford, LaClaire, Bernard

A court must first determine whether, if plaintiff's allegations are accepted as true, there would be a constitutional violation. Saucier v. Katz, 533 U.S. 194, 201 (2001).  Only if there is a constitutional violation does a court proceed to determine whether the constitutional rights, of which a reasonable person would have known, were clearly established at the time of the alleged violation. Aiken, 236 F. Supp. 2d at 230.  Here, the second prong of the inquiry need not be reached because, as discussed supra, accepting all of Amaker's allegations as true, he has not shown that defendants violated his constitutional rights.

Therefore, it is recommended in the alternative that defendants' motion on this ground be granted.

### C. Eighth Amendment

The Eighth Amendment explicitly prohibits the infliction of "cruel and unusual punishment."  U.S. Const. amend. VIII.  This includes the provision of medical care and punishments involving "the unnecessary and wanton infliction of pain."  Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994) (citations omitted).  Amaker alleges Eighth Amendment claims for both inadequate medical care and excessive force.  Defendants claim that no excessive force or substandard medical treatment occurred and, in the alternative, they are entitled to qualified immunity.

### 1. Medical Care

A prisoner advancing an Eighth Amendment claim for denial of medical care must allege and prove deliberate indifference to a serious medical need.  Wilson v. Seiter, 501 U.S.

294, 297 (1991); Hathaway, 37 F.3d at 66.  More than negligence is required "but less than conduct undertaken for the very purpose of causing harm."  Hathaway, 37 F.3d at 66.  The test for a § 1983 claim is twofold.  First, the prisoner must show that there was a sufficiently serious medical need.  Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998).  Second, the prisoner must show that the prison official demonstrated deliberate indifference by having knowledge of the risk and failing to take measures to avoid the harm.  Id.  "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted."  Farmer v. Brennan, 511 U.S. 825, 844 (1994).

"'Because society does not expect that prisoners will have unqualified access to healthcare', a prisoner must first make [a] threshold showing of serious illness or injury" to state a cognizable claim.  Smith v. Carpenter, 316 F.3d 178, 184 (2d Cir. 2003)(quoting Hudson v. McMillian, 503 U.S. 1,9 (1992)).  Because there is no distinct litmus test, a serious medical condition is determined by factors such as "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3) the existence of chronic and substantial pain."  Brock v. Wright, 315 F.3d 158, 162-63 (2d Cir. 2003)(citing Chance, 143 F.3d at 702).  The severity of the denial of care should also be judged within the context of the surrounding facts and circumstances of the case.  Smith, 316 F.3d at 185.

Deliberate indifference requires the prisoner "to prove that the prison official knew of and disregarded the prisoner's serious medical needs."  Chance, 143 F.3d at 702.  Thus, prison officials must be "intentionally denying or delaying access to medical care or intentionally

interfering with the treatment once prescribed." Estelle v. Gamble, 429 U.S. 97, 104,

(1976). "Mere disagreement over proper treatment does not create a constitutional claim,"

as long as the treatment was adequate. Id. at 703. Thus, "disagreements over medications,

diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for

specialists . . . are not adequate grounds for a § 1983 claim." Magee v. Childs, No. 04-CV-

1089 (GLS/RFT), 2006 WL 681223 at *4 (N.D.N.Y. Feb. 27, 2006). Furthermore,

allegations of negligence or malpractice do not constitute deliberate indifference unless the

malpractice involved culpable recklessness. Hathaway v. Coughlin, 99 F.3d 550, 553 (2d

Cir. 1996).

    As to the first prong, Amaker has offered evidence that the injuries sustained during the

cell extraction were serious. Traditionally, "a broken finger . . . without more, simply does

not present a condition of urgency of the type that may produce death, degeneration or

extreme pain which correspondingly merits constitutional protection." Magee, 2006 WL

681223 at *4 (internal citations omitted). Thus, a broken fifth finger is not a serious medical

need. However, "a broken rib could present a serious medical need" if treatment was not

properly administered. Torres v. New York City Dep't of Corrs., No. 93-CV-6296 (MBM),

1995 WL 63159 at *1 (S.D.N.Y. Feb. 15, 1995). Thus, the combination of an alleged

broken rib and finger appear to constitute a serious medical need. Amaker asserts

subsequent allegations of pain in his side and hand, claiming that the bones were broken.

Docket No. 152, attachment 8 at 1. Therefore, as to the back and hand injuries, Amaker

has sufficiently raised a material issue of fact as to the first prong of his claim.

    However, even if it can be argued that Amaker was suffering from a serious medical

need, his claim fails to demonstrate deliberate indifference. It appears beyond dispute that

14

Amaker was seen by nursing staff over ninety times and facility health care prescribers eight times following the September 5, 2002, and was given X-rays on September 11, 2002. Smith Decl. at ¶¶ 7-8, 12-13.  While Amaker denies this, his medical records are comprised of fifty-four pages of Ambulatory Health Records with 135 entries from nursing and health care staff discussing treatment of various complaints.[10]  Clearly, the prison officials were not intentionally delaying, denying, or interfering with treatment as Amaker was persistently being seen by health care professionals during his tenure at Upstate.  Amaker has advanced nothing to refute defendants' claims, which are further bolstered by the medical records.  Thus, Amaker's conclusory assertions that he received no medical attention for the entire time he resided at Upstate, absent other documentation, fails to constitute evidence sufficient to raise issues of fact as to the medical records.  See Williams v. Coughlin, 650 F. Supp. 955, 957 (S.D.N.Y. 1997)(granting summary judgment where "plaintiff's affidavit and deposition . . . [did] not contain facts involving manifestations of . . .deliberate indifference. . . .").

Additionally, Amaker claims that his eye treatment was being delayed and that he was not receiving contact solution which damaged his contact lenses and vision.  Compl. at ¶ 24. "Where a prisoner's vision will degenerate in the absence of corrective glasses, the need for vision correction can be a sufficiently serious medical need."  Davidson v. Scully, No. 81-CV-0390 (PKL), 2001 WL 963965 at *6 (S.D.N.Y. 2001) (citing Koehl v. Dalsheim, 85 F.3d 86, 87 (2d Cir. 1996)(finding serious medical injury where the denial of eye-glasses caused a prisoner's eye to "shift[] fully into the corner of the socket," leaving him practically

---

[10]These are sealed medical records on file with the Court.  See Docket No. 151.

sightless).  However, Amaker alleges no degeneration in his eyes as a result of the delayed

treatment or the failure to receive contact solution.  Thus, his conclusory allegations do not

satisfy the first prong of serious medical need or injury.

However, even if it can be argued that Amaker was suffering from a serious medical

need, his claim fails to demonstrate deliberate indifference.  In addition to the medical

treatment discussed above, Amaker "was seen by eye related specialists 17 times since

June 4. 2001," and was given contact solution at least thirty-five times.  Smith Decl. at ¶ 18-

19.  This information is supported by various entries in the Ambulatory Health Record.

Thus, as before, the conclusory assertions that he received no medical attention for his

eyes for the entire time he resided at Upstate, absent some other documentation, does not

raise a question of fact as to the element of deliberate indifference.  See Williams, 650 F.

Supp. at 957.

Furthermore, Amaker claims that he was denied treatment for his knees.  Amaker

underwent doctors' visits and consultations regarding MRIs and knee braces.[11]  Docket No.

157, attachment 3 at 24-26.  Additionally, Amaker underwent physical therapy during his

incarceration at Upstate.  Docket No. 157 at ¶ 32; Smith Decl. at ¶ 6.  Amaker failed to

make any representations as to pain or degeneration in his knees resulting in a serious

medical need.  See Hall v. Artuz, 954 F. Supp. 90, 94 (S.D.N.Y. 1997) (finding an issue of

fact as to the serious medical need experienced by a prisoner claiming that the failure of

---

[11]The correspondence referenced in the Docket concern events occurring at Clinton
Correctional Facility.  The physician involved in the consultations, Dr. Ellen, is not a named
defendant.  However, the authors of the letters and memoranda (defendants Wright and
Gidrich) are named and subsequent physical therapy occurred while Amaker was
incarcerated at Upstate; thus, the treatment will be discussed although not precisely pled
in the complaint or motion for summary judgment.

DOCS to provide knee braces resulted in atrophy, swelling, and pain).  Thus, Amaker's conclusory allegations, absent some showing of need or injury, are insufficient to establish the first prong of the inquiry.  Additionally, the correspondence Amaker received illustrates that, after the diagnostic tests and evaluations, the medical staff did not find the braces were medically necessary.  Id.  Thus, even if Amaker could sufficiently prove the first prong of the analysis, he cannot sufficiently establish an Eighth Amendment claim on the basis that he disagreed with the course of medical treatment that was provided.

Lastly, courts are divided over whether abdominal pain constitutes a serious medical need.  Compare Young v. Coughlin, No. 93-CV-0262 (DLC), 1998 WL 32518 at *4 (S.D.N.Y. Jan. 29, 1998) (holding that even without a physical cause for the abdominal pain, a "reasonable jury could infer that the pain [the prisoner] experienced existed and was sufficiently serious to trigger Eighth Amendment protection), with Ross v. McGinnis, No. 00-CV-0275 (ESR), 2004 WL 1125177 at *10 (W.D.N.Y. Mar. 29, 2004) (holding that the prisoner's "complaints of abdominal pain, vomiting, heartburn, constipation, body odor and extreme body heat did not constitute a serious medical need.").  However, Amaker's claims are conclusory, unsubstantiated, and undocumented.  Thus, he has not successfully raised a material issue of fact as to his serious medical need here.

However, even if it can be argued that Amaker was suffering from a serious medical need, his claim fails to demonstrate deliberate indifference.  For the same reasons stated in response to Amaker's medical indifference claims for his hand, ribs, and eyes, Amaker has failed to set forth facts sufficient to establish the deliberate indifference of the prison officials.  Thus, his summary conclusions are inadequate to substantiate his Eighth Amendment claims.

17

Therefore, defendants' motion for summary judgment on this ground should be granted.

## 2. Excessive Force

Amaker alleges that he was subjected to excessive force at Upstate when he was extracted from his cell and at Downstate during the blood draw.

The Supreme Court has established that inmates enjoy Eighth Amendment protection against the use of excessive force and may recover damages for its violation under 42 U.S.C. § 1983.  Hudson v. McMillian, 503 U.S. 1, 9-10 (1992).  The Eighth Amendment's prohibition against cruel and unusual punishment precludes the "unnecessary and wanton infliction of pain."  Gregg v. Georgia, 428 U.S. 153, 173 (1976); Sims v. Artuz, 230 F.3d 14, 20 (2d Cir. 2000).  To bring a claim of excessive force under the Eighth Amendment, a plaintiff must establish both objective and subjective elements.  Blyden v. Mancusi, 186 F.3d 252, 262 (2d Cir. 1999).

The objective element is "responsive to contemporary standards of decency" and requires a showing that "the injury actually inflicted is sufficiently serious to warrant Eighth Amendment protection."  Hudson, 503 U.S. at 9 (internal citations omitted); Blyden, 186 F.3d at 262.  However, "the malicious use of force to cause harm constitute[s] [an] Eighth Amendment violation per se" regardless of the seriousness of the injuries.  Blyden, 186 F.3d at 263 (citing Hudson, 503 U.S. at 9).  "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind."  Hudson, 503 U.S. at 9-10 (citations omitted).  "'Not every push or

18

shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.'" Sims, 230 F.3d at 22 (citation omitted).

The subjective element requires a plaintiff to demonstrate the "necessary level of culpability, shown by actions characterized by wantonness." Id. at 21 (citation omitted). The wantonness inquiry "turns on 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" Id. (quoting Hudson, 503 U.S. at 7).

Here, Amaker alleges that during the forced extraction from his cell and subsequent blood draw on September 5, 2002, he was the victim of excessive force. Compl. at ¶¶ 8-10, 14, 19-23. Amaker alleges that he was hit with the battering ram during the cell extraction which resulted in an broken rib and lacerated finger. Docket No. 157, attachment 3 at ¶¶ 12, 15. Further, Amaker alleges that he was subjected to another assault, where his wrists were bent and twisted, during the blood draw at Downstate. Docket No. 157, attachment 3 at ¶¶ 13, 17. Thus, allegations of striking a prisoner with enough force to break a rib constitutes a sufficiently serious injury and raises questions of fact as to the good-faith of the officers involved. Additionally, twisting a prisoner's wrist to the point that he or she is writhing in pain presents a question of fact sufficient to withstand the motion for summary judgment.

Accordingly, it is recommended that defendants' motion on this ground be denied.


### D. Fourteenth Amendment

### 1. Due Process

Amaker contends that defendants violated his due process rights when he was unable to attend his disciplinary hearings, resulting in a term of confinement in SHU.  Defendants contend that because the disciplinary hearing records have been reversed and Amaker's record expunged of the convictions, no due process violation has occurred.  Amaker alleges that because he was unjustly confined in SHU from November 4, 2002 until February 10, 2003, a period of ninety-eight days, the administrative remedies are insufficient to correct the due process violations.

As a threshold matter, an inmate asserting a violation of his or her right to due process must establish the existence of a protected interest in life, liberty, or property. See Perry v. McDonald, 280 F.3d 159, 173 (2d Cir. 2001).  "Prisoners enjoy the right not to be deprived of life, liberty or property without due process of law, but their rights are to be balanced with, and often tempered by, the needs of their special institutional setting." Malik v. Tanner, 697 F. Supp 1294, 1301 (S.D.N.Y. 1988) (citing Wolff v. McDonnell, 418 U.S. 539, 556 (1974)). "When restrictive confinement within a prison is expressly imposed as a disciplinary sanction . . . , there will ordinarily be no doubt that the confinement impaired a liberty interest . . . and that [] due process procedures . . . are required."  Sher v. Coughlin, 739 F.2d 77, 81 (2d Cir. 1984); see also McCann v. Coughlin, 698 F.2d 112, 121 (2d Cir. 1983) (holding "that an inmate who is or may be sentenced to a term of confinement in a Special Housing Unit has a right to the procedural protections of the Due Process Clause."). Prisoners attending disciplinary hearings "do not enjoy the full panoply of procedural rights" granted to criminal defendants; however, due process rights associated with disciplinary proceedings include "(1) advance notice of the charges . . . , (2) a written statement of findings of fact as to the evidence . . . and the reasons for the disciplinary action . . . , and

20

(3) the opportunity to appear, call witnesses and present documentary evidence, unless doing so would be unduly hazardous to institutional safety or correctional goals." Malik, 697 F. Supp at 1301 (citations omitted).  Because the right to attend and be heard at one's own hearing is "one of the minimal elements of process due a prisoner," the institutional safety exceptions justifying the prisoner's removal "must remain narrow." Id. at 1302.

Defendants do not assert that Amaker was excluded from his hearing in the interests of institutional safety or correctional goals.  Docket No. 152, attachment 7 at 4.  However, defendants claim that the administrative appeals process remedied their transgressions since Amaker's records were expunged.  Docket No. 152, attachment 4 at 13.  "[D]ue process requires that any administrative cure must occur before an inmate suffers any deprivation of his liberty as a result of a procedural defect." Parris v. Coughlin, 90-CV-414, 1993 WL 328199 (N.D.N.Y. Aug. 24, 1993); see also Patterson v. Coughlin, 761 F.2d 886, 893 (holding "[o]nce a cause of action for a constitutional violation accrues, nothing that the state does subsequently can cut off the §1983 claim.").  Therefore, "[t]he rule is that once prison officials deprive an inmate of his constitutional procedural rights at a disciplinary hearing and the prisoner commences to serve a punitive sentence. . .the prison official responsible for the due process deprivation must respond in damages, absent the successful interposition of a qualified immunity defense." Walker v. Bates, 23 F.3d 652, 658-59 (2d Cir. 1994).

In this case, there is no doubt that Amaker was denied his due process right to attend his disciplinary hearing and present evidence on his own behalf.  Moreover, it is clear that Amaker was sentenced to, and served, an extended amount of time in SHU irrespective of

the administrative remedy afforded to him by defendants.[12]  Therefore, the administrative remedy came far later than the commencement of the punitive confinement Amaker served.

Accordingly, it is recommended that defendants' motion on this ground be denied.


### 2. Qualified Immunity

Defendants claim that even if Amaker's due process claims are substantiated, LeClaire, Girdich, Selsky, and Kelly are entitled to qualified immunity for the subsequent course of administrative action taken.

The standard for qualified immunity has been discussed <u>supra</u> in subsection III(B)(2).  In this case, viewing the evidence in the light most favorable to Amaker, the hearing officers violated a clearly established constitutional right of which a reasonable person would have known.  It was clearly established and reasonably known that it was a fundamental constitutional right of the accused to be present at his own hearing and present evidence on his behalf.  Additionally, this right was also a clearly established law.  <u>See</u> N.Y. COMP. CODES R. & REGS. tit. 7, § 253.6.

Accordingly, defendants are not entitled to qualified immunity and their motion on this ground should be denied.

---

[12]Additionally, the Second Circuit has held that at least where the period of confinement exceeded thirty days, "refined fact-finding" is required to resolve the question whether an inmate's liberty interest is implicated by the period of confinement in SHY or keeplock under <u>Sandin. v. Conner</u>, 515 U.S. 472, 483-84 (1995).  <u>Colon v. Howard</u>, 215 F.3d 227, 230 (2d Cir. 2000)).

**E. Personal Involvement**

Defendants contend that Amaker has failed to establish supervisory liability for certain of the defendants.[13]

"'[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (quoting Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991)).  Thus, supervisory officials may not be held liable merely because they held a position of authority. Id.; Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996).  However, supervisory personnel may be considered "personally involved" if:

> (1) [T]he defendant participated directly in the alleged constitutional violation;
>
> (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong;
>
> (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom;
>
> (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or
>
> (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) (citing Williams v. Smith, 781 F.2d 319, 323-24 (2d Cir. 1986)).

---

[13]Defendants make this argument on behalf of defendants Martin, Kourofsky, Bezio, Goord, LeClaire, Artuz, Lucas, Kinney, Bernardi, Duncan, Botsford, Clegg, Wolfe, Delgado, and Gidrich

**1. Goord**

Amaker alleges that defendant Goord is personally involved because he was responsible for authoring the unconstitutional DNA extraction policies for DOCS.  Docket No. 157, attachment 2 at 4.  However, as discussed above, there is nothing unconstitutional about the policies promulgated by DOCS concerning the DNA extraction.  Therefore, these unfounded and conclusory allegations, absent something more, are insufficient to allege Goord's personal involvement.

Accordingly, defendant Goord's motion for summary judgment on this ground should be granted.

**2. Kourofsky, Martin, Bezio, and Kienhart**

Amaker alleges that the defendants comprising this chain of command improperly authorized and directed the cell extraction at Upstate.  Compl. at ¶8.  However, a position in a hierarchal chain of command, absent something more, is insufficient to support a showing of personal involvement.  Additionally, the order which descended down the chain was in compliance with a constitutional statute authorizing DNA extraction from a selected class of felons.  Thus, the action the officers were taking was neither an unconstitutional action, policy, nor order.  Additionally, by issuing such orders, these defendants were not being grossly negligent in their management of inferior officers.

Therefore, with respect to defendants Kourofsky, Martin, Bezio, and Kienhart, the motion for summary judgment should be granted.

### 3. Wright

Amaker contends that defendant Wright was informed of Amaker's medical conditions and the treatment denials.  Docket No. 157, attachment 2 at 5, 9.  However, there is no evidence beyond Amaker's conclusory allegations that Wright participated in the alleged violations, created a policy which allowed constitutional violations to continue, or was grossly negligent in managing the other named defendants.

Therefore, it is recommended that defendants' motion for summary judgment as to defendant Wright be granted.

### III.  Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that:

    A. Defendants' motion for summary judgment (Docket No.152) be:

        1.  **GRANTED** in all respects as to Amaker's Fourth Amendment claims;

        2.  **GRANTED** in all respects as to Amaker's Eighth Amendment claims for medical indifference;

        3. **DENIED** in all respects as to Amaker's Eighth Amendment claims for excessive force;

        4. **DENIED** in all respects as to Amaker's Fourteenth Amendment claims of denial of due process and defendants' claims for qualified immunity; and

        5. **GRANTED** in all respects as to defendants Goord, Kourofsky, Martin, Bezio, Keinert, and Wright; and

B.  Amaker's cross-motion for summary judgment (Docket No. 157) be **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated:  November 30, 2007
        Albany, New York

_David R. Homer_____
United States Magistrate Judge